UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH A. WAINEY, personal
representative of the estate of
Calvin Griffin, Jr., deceased,

      Plaintiff,

v.                           Case No.:  2:20-cv-969-SPC-NPM

UNITED STATES OF AMERICA,

      Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court are Plaintiff Deborah Wainey's Amended Motion for Summary Judgement (Doc. 34) and Defendant United States of America's Motion for Summary Judgment (Doc. 32). The parties have filed responses and replies. (Doc. 42; Doc. 46; Doc. 48; Doc. 49). The cross-motions for summary judgment are thus ripe for review.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND

Because the Court writes only for the parties (who are familiar with the facts), it includes only those necessary to explain the decision.[2]

This case is about Calvin Griffin Jr. and the medical care he received from the U.S. Department of Veterans Affairs ("VA") from 2017 through 2019. Griffin died on July 16, 2019. Plaintiff Deborah A. Wainey is the personal representative of his estate. At issue is whether the VA committed medical malpractice in identifying and treating a specific cancer - squamous cell carcinoma in Griffin's mouth - and whether this caused Griffin's death.

First some background is necessary. Griffin was a Vietnam veteran at risk of developing oral cancer considering previous (but successfully treated) cancers, exposure to Agent Orange, and tobacco use. Griffin received dental care at the Lee County VA Healthcare Center ("Center") for years. From early 2014 through July 2017, Stephen P. Dris, D.D.S., was Griffin's VA dentist at the Center. Prior to 2017, Griffin's top teeth, one bottom tooth, and his voice box were removed. He also underwent a tracheostomy. Griffin consumed most food through a feeding tube.

---

[2] The Court draws these facts from the parties' Statement of Material Facts and the record. Unless otherwise noted, the parties either agree on these facts or they were undisputed in the record.

Next begins the story of this case.  In early 2017, Dris suspected Griffin might have oral cancer.  More specifically, in January 2017, a dental hygienist noted a sore area around Griffin's teeth 27-28.[3]  Such a sore area could be an indication of oral cancer or numerous other conditions.  The dental hygienist made an appointment for Griffin to see Dris.  On February 6, 2017, Dris noted teeth 26-28 were inflamed and tender to touch.  Dris prescribed a mouth rinse and scheduled Griffin for follow up.  He advised Griffin to call immediately if the area got worse.  On March 6, 2017, Dris noted no change to the area.  Because there was no improvement, Dris referred Griffin to Carmelo Saraceno, M.D., a VA ear, nose, and throat doctor, to rule out oral cancer and the need for a biopsy.  Saraceno saw Griffin for this referral beginning in April 2017.

Dris saw Griffin twice more through July 2017.  Despite continued issues with the teeth 26-28 area, Dris took no further steps to obtain a biopsy, but knew Griffin was being seen by Saraceno.  On Griffin's last visit with Dris, teeth 25-26 were loose, so Dris referred Griffin to a community care oral surgeon, Tinerfe Tejera, M.D., for extraction.  Dris retired on July 28, 2017, and his involvement with Griffin ended.  Wainey does not allege Dris's medical duty to him existed after retirement.

---

[3] Wainey repeatedly states Griffin had sore spots in his mouth in February 2016, but Wainey's own expert, Richard Linden, D.D.S., testified that these were unrelated to cancer. There was also a sore spot in August 2016 by tooth 26, but it went away by September 2016.

Along with and after Dris, Saraceno treated Griffin for the teeth 26-28 area. Saraceno saw Griffin five times from April 2017 to August 2017. Saraceno believed Griffin had candidiasis, a condition causing the inflamed and painful area, and treated him accordingly. Saraceno noted Griffin may need a biopsy but doubted it was cancer. The parties dispute whether Saraceno referred Griffin to Tejera for a biopsy along with the teeth extraction Dris recommended.

Starting in August 2017, Tejera saw Griffin multiple times but could not extract his teeth until January 2018. Griffin's mouth wouldn't get numb because of infection and inflammation and there were issues utilizing an IV and nitrous oxide.

Finally, in January 2018, Tejera performed Griffin's oral surgery, extracting teeth 20-29. During this surgery, Tejera encountered suspicious tissue that he biopsied. Prior to the surgery, Tejera noted nothing warranting a biopsy. A February 13, 2018, pathology report of the suspicious tissue and a follow up PET/CT scan revealed cancer – specifically a large mass of squamous cell carcinoma in the back floor of Griffin's mouth involving the floor of the mouth, tongue, jaw, and skin of the chin.

To treat this cancer, doctors removed the front third of Griffin's jaw, including his chin, and soft tissue of the floor of his mouth up to and including a portion of his tongue. All remaining teeth were removed. Considering the

4

cancer's advanced stage, Griffin was further treated with radiation and chemotherapy. Reconstructive surgery was performed. By August 2018, Griffin's treatment was complete, and the oral cancer was gone, although effects on Griffin's appearance and functioning remained.

In November 2018, a routine cancer screening indicated pulmonary adenocarcinoma, a lung cancer separate from Griffin's oral cancer. Neither party claims that Griffin's oral cancer metastasized into this lung cancer.[4] The lung cancer was also treated and cured before Griffin's death.

From May 14, 2019, to May 22, 2019, Griffin was hospitalized for pneumonia. He then entered hospice care and died on July 16, 2019. Both parties' experts, Constantine A. Mantz, M.D. and Ann W. Gramza, M.D., seem to believe Griffin died of aspiration pneumonia. Aspiration pneumonia occurs when a patient has an impaired swallow function. Food and/or liquid is breathed into the lungs instead of swallowed into the stomach, creating an environment for infection. The parties hotly contest whether Griffin's oral

---

[4] Griffin's death certificate lists the cause of death as cancer of the throat and tongue with metastases to the lungs. This is unfortunate because it's clearly wrong with regards to the metastases. All medical providers directly involved in Griffin's care and both parties' experts state the oral and lung cancers were separate. Charles Philip Friedrich, D.O., from Hope Hospice, certified the death certificate. He did not treat Griffin. He reported he wrote metastases only because that's what Hope Hospice medical providers put in their progress notes. Friedrich confirmed if he had seen more of Griffin's medical records, he would not have used metastases on the death certificate.

cancer and its treatment caused this aspiration pneumonia and/or Griffin's death.

One final point warrants mentioning.  Griffin was hospitalized for a separate medical condition in August 2017.  Imaging was taken that included Griffin's oral cavity.  It did not show evidence of oral cancer, raising questions about whether the cancer diagnosed in February 2018 existed when Dris first suspected it in March 2017.  The parties dispute whether cancer could have been present but not visible on these images.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*.  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

For issues the movant must prove, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of*

*Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013) (citation omitted).  But for issues the non-movant bears the burden, the movant has two options: (1) point out a lack of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (citation omitted).  "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

At the summary judgment stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).  It may not undertake credibility determinations or weigh the evidence when reviewing the record. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). What's more, "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

### A. A Disputed Expert: Constantine A. Mantz, M.D.

Before turning to the parties' arguments on summary judgment, the Court must address Constantine A. Mantz, M.D., Griffin's treating oncologist

who Wainey seeks to use as an expert.  The Government argues the Court should exclude Mantz's testimony due to Wainey's tardy disclosure of him and summary of his expert opinions.  As Wainey relies on Mantz's testimony, this matter needs to be decided first.

Mantz is a medical doctor licensed in Florida, board certified in radiation oncology.  Mantz treated Griffin for multiple cancers including the oral cancer at issue here.  Both Wainey and the Government listed Mantz's treatment records in their initial disclosures and Wainey deposed Mantz on June 20, 2022.  But Wainey did not disclose Mantz as an expert until August 1, 2022, long after the Court's deadline.  Even then, the Government claims Mantz's disclosure was improper because it did not list Mantz's fees and previous testimony.  The Government argues the Court should exclude Mantz's testimony for this late and insufficient disclosure.  The Government raises this issue in multiple filings and Wainey responds at length, so the matter is ripe for decision.

The Federal Rules treat retained and nonretained experts different. Retained experts must produce a full report.  Fed. R. Civ. P. 26(a)(2)(B). Nonretained experts need only provide the subject matter, facts, and opinions of their testimony.  Fed. R. Civ. P. 26(a)(2)(C).  A treating physician is a common type of nonretained expert.  Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment; *Ballesteros v. Wal-Mart Stores E., LP,*

No. 2:19-cv-881-SPC-NPM, 2021 WL 1737452, at *4 (M.D. Fla. May 3, 2021).

Based on the record, Mantz is a nonretained expert.

But retained or not, expert witness opinions must be formally disclosed:

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. . . . Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C).

Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment. Wainey didn't disclose Mantz in a timely manner. But her disclosure was sufficient to the extent nonretained experts are not required to provide previous testimony or fees. *Compare* Fed. R. Civ. P. 26(a)(2)(C) *with* Fed. R. Civ. P. 26(a)(2)(B).

Wainey's tardy disclosure of Mantz violated Rule 26(a)(2)(D). As the Rule violator, Wainey bears the burden of showing her failure was substantially justified or harmless. *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017). While Wainey's failure was not substantially justified[5], the Court finds it was harmless and will allow Mantz to testify as a lay and expert witness.

---

[5] Wainey is represented by counsel, who know the Rules. *See* Local Rule 2.01(b). Still, Wainey argues that Mantz was a Government agent – the VA referred Griffin to Mantz for treatment – so she did not know what Mantz's testimony would be until deposition. She also claims she was unaware Griffin's cause of death was in dispute given his death certificate. Even if Wainey did not know she would use Mantz as an expert until Mantz's deposition, she

Wainey's failure to timely disclosure Mantz as a nonretained expert is harmless here.  While the Eleventh Circuit has not spoken on the definition of harmless in this context (*Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307-08 (11th Cir. 2021)), many courts consider a list of factors to determine both substantial justification and harmlessness:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*E.g.*, *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019); *see also Rangel*, 202 F. Supp. 3d at 1366 (applying test to harmlessness alone); *but see Romero v. Drummond Co.*, 552 F.3d 1303, 1321, 1323 (11th Cir. 2008) (applying similar test to excluding fact witness, but not to excluding expert under Rule 37(c)(1)).

Here, the Government knew Mantz was Griffin's treating oncologist for the oral cancer and possessed Mantz's records.  Wainey also deposed Mantz, which the Government took an active role in, and Mantz will only be testifying to opinions expressed in this deposition.  To further cure any surprise or prejudice to the Government, the Court will reopen discovery for the limited

---

should have supplemented her disclosures immediately following the deposition, not over a month later on the dispositive motion deadline.  So there's no substantial justification for Wainey.

purpose of allowing the Government to depose Mantz now that it is aware of Mantz's role as an expert.  If the Government chooses to, it must do so on or before December 2, 2022.  The parties must work together to coordinate this deposition.  Since trial is not scheduled until February 2023, this will not disrupt it.

**B. Summary Judgment on Uncontested Facts**

Wainey seeks summary judgment on some undisputed facts.  The Government does not contest the following:

- Stephen P. Dris, DDS, was a VA dentist who treated Griffin from early 2014 until his retirement on July 28, 2017.

- Wainey satisfied the pre-suit requirements of Fla. Stat. § 766.

- Wainey satisfied the pre-suit requirements of 28 U.S.C. § 2675.

To the extent Wainey seeks summary judgment on these facts, it is granted because these facts are uncontested. *See* Fed. R. Civ. P. 56(g).

**C. Summary Judgment on Medical Malpractice**

The heart of Wainey's and the Government's Motions for Summary Judgment is whether the Court can grant summary judgment for either side on Griffin's claim of medical malpractice.  The Court finds it cannot and must decide at trial if medical malpractice occurred.

Veterans injured by VA medical malpractice can sue the United States in federal court under the Federal Tort Claims Act (FTCA).  28 U.S.C. §

1346(b)(1); 28 U.S.C. § 2674; *Smith v. United States*, 7 F.4th 963, 973 (11th Cir. 2021). State substantive law – including the standard of care for medical professionals – governs an FTCA action. 28 U.S.C. § 1346(b)(1); *Smith,* 7 F.4th at 973. So, Florida's medical malpractice law controls here.

Under Florida law, Wainey must prove by the preponderance of the evidence (1) the standard of care owed by Defendant, (2) that Defendant breached that standard of care, and (3) the breach proximately caused Griffin's damages. *See* Fla. Stat. § 766.102(1) (2013); Fla. Stat. § 766.102(3)(b) (2013); *Prieto v. Total Renal Care, Inc.*, 843 F. App'x 218, 224 (11th Cir. 2021). The prevailing professional standard of care is "the level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102(1) (2013).

To determine if a breach proximately caused an injury, Wainey must show the injury more likely than not resulted from defendant's negligence. *Prieto,* 843 F. App'x at 225. "In other words, [Wainey] must show that what was done or failed to be done probably would have affected the outcome." *Id.*

Wainey argues summary judgment should be granted for her on the elements of medical malpractice liability – specifically (1) on the standard of care required by Dris, (2) that Dris breached this standard, and (3) that Dris's breach proximately caused Griffin's death. The Government argues summary

12

judgment should be granted for it because Wainey cannot prove causation. The Court disagrees with both parties.

Wainey claims the Government has no expert to contradict her experts on standard of care, breach, and causation. This matters because uncontradicted expert testimony may warrant granting summary judgement on those issues. But Wainey's assertion is false. Wainey ignores Government's experts Thomas Bowers, M.D. (opining Dris met the standard of care); Ann W. Gramza, M.D. (opining Dris met standard of care and oral cancer was not the cause of Griffin's death); and Dris himself (opining he met the standard of care). Ignorance is not bliss here. The Government's experts, and their testimony, exist whether Wainey acknowledges them or not.

Regarding the standard of care and breach, the simple facts are that Dris suspected cancer near teeth 26-28 in March 2017, but no biopsy was performed until almost 11 months later. Wainey presents expert testimony this breached the standard of care (Linden, Mantz). The Government presents expert testimony it did not (Bowers, Gramza, Dris). At issue is the specific standard of care considering the circumstances and whether the Government breached it. This is a battle of experts that must be decided at trial.

Causation is also at issue. Wainey claims Griffin died from his oral cancer diagnosed in February 2018 or complications related to it. The

Government claims Wainey cannot prove this.  The Court disagrees with the Government - the facts are not clear at this stage.

Wainey has evidence oral cancer caused Griffin's death. The death certificate states oral cancer was a cause of death and the certifying physician insisted it was, even if the oral cancer didn't metastasize to Griffin's lungs.[6] Mantz testified complications related to Griffin's cancer treatment could contribute to aspiration pneumonia, which both Mantz and Gramza seem to believe was Griffin's direct cause of death.  While this may not carry the day at trial, at summary judgment, it's enough.  *See, e.g.*, *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) ("when conflicts arise between the facts evidenced by the parties, we must credit the nonmoving party's version") (cleaned up).

But the Government has evidence saying the opposite.  It points to evidence that oral cancer did not cause Griffin's death.  Gramza and Mantz both testified Griffin's oral cancer was gone by the time Griffin died.  And Gramza testified it is unlikely diagnosis and treatment of Griffin's oral cancer impacted his life expectancy.  Again, this element will come down to a battle of the experts at trial.

---

[6] Dris also said he thought oral cancer caused Griffin's death, but he retired before Griffin died and obtained this information only from the death certificate.  So, the Court gives Dris's belief no weight independent from the death certificate and the certifying physician's testimony.

In short, summary judgment is not proper for either party. The Court will grant summary judgment only to the limited extent there are uncontested facts. The Court will decide the elements of medical malpractice liability at trial after hearing from the medical experts.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 34) is **GRANTED** and **DENIED** in part. It is **GRANTED** to the limited extent the following facts are uncontested: (1) Dris was a VA dentist who treated Griffin from early 2014 until his retirement on July 28, 2017; (2) Wainey satisfied the pre-suit requirements of Fla. Stat. § 766; and (3) Wainey satisfied the pre-suit requirements of 28 U.S.C. § 2675. In all other respects, the Motion is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 32) is **DENIED**.

3. The Court will reopen discovery for the limited purpose of allowing the Government to depose Constantine A. Mantz, M.D. If the Government chooses to, it must do so on or before December 2, 2022. The parties must work together to coordinate this deposition.

4. This action is **REFERRED** to United States Magistrate Judge Kyle C. Dudek to conduct a settlement conference and issue any order deemed appropriate thereafter.

a. All parties must attend the settlement conference as directed by Judge Dudek.

b. The parties are **DIRECTED** to contact Courtney Ward, Judge Dudek's courtroom deputy clerk, at 239-461-2007 to arrange for a mutually agreeable time for the settlement conference.

**DONE** and **ORDERED** in Fort Myers, Florida on October 12, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:      United States Magistrate Judge Kyle C. Dudek
             All Parties of Record

16